Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| Master Roofing, Inc.<br><br>Peticionario<br><br>v.<br><br>Junta de Subastas de la Administración de Servicios Generales; Administración de Servicios Generales representadas por el Gobierno de Puerto Rico, representado por el Secretario de Justicia, Hon. Domingo Emanuelli Hernández<br><br>Peticionadas | KLRX202400003 | *Mandamus*<br><br>Administración de Servicios Generales-Junta de Subastas<br><br>23J-08274 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de abril de 2024.

Comparece Master Roofing, Inc. (en adelante, Master Roofing o parte peticionaria), mediante el recurso de *Mandamus*, y nos solicita que ordenemos a la Junta de Subastas de la Administración de Servicios Generales (en adelante, Junta de Subastas o parte peticionada) notificar de inmediato la *Resolución de Adjudicación Enmendada Núm. 23J-08274* a Master Roofing y a su representante legal, dado que afirman no haber recibido la notificación correspondiente.[1] En esencia, la parte peticionaria alega que la Junta de Subastas incumplió con su deber ministerial e incurrió en una violación al debido proceso de ley al no notificarles, a pesar de ser partes con interés en el procedimiento relacionado con la Subasta Formal Núm. 23J-08274.

---

[1] Apéndice del recurso de *Mandamus* de Master Roofing, págs. 70-83.

Por los fundamentos que expondremos a continuación, se desestima el recurso de epígrafe. Explicamos.

**-I-**

El 30 de enero de 2023, la Junta de Subastas emitió una convocatoria para la participación de la Subasta Formal Núm. 23J-08274. El propósito de la subasta era establecer contratos de selección múltiple para la impermeabilización de techos de concreto dirigidos a los departamentos, dependencias, agencias e instrumentalidades de la Rama Ejecutiva, así como a las corporaciones públicas y municipios del Gobierno de Puerto Rico. Aquellas personas interesadas en participar en el proceso de subasta debían presentar sus ofertas tanto física como electrónicamente en la oficina de la Junta de Subastas antes del 3 de abril de 2023 a las 10:00 a.m. A tales efectos, el acto de apertura se llevó a cabo ese mismo día a las 10:30 a.m., con la participación de veinticinco (25) licitadores.

Después de completar varios trámites relacionados con el proceso de subasta, el 8 de septiembre de 2023, la parte peticionada emitió una *Resolución de Adjudicación* en la que concedió la buena pro de la Subasta Formal Núm. 23J-08274 a varios licitadores. Para lograr esta determinación, la agencia evaluó los siguientes criterios: (1) el precio ofrecido por los licitadores; (2) el cumplimiento con las instrucciones generales, los términos, las condiciones y las especificaciones; y (3) la representación del mejor valor para el Gobierno de Puerto Rico.[2] Además, la agencia dividió la convocatoria en nueve (9) zonas, que incluían los pueblos de San Juan, Bayamón, Arecibo, Aguadilla, Mayagüez, Ponce, Guayama, Humacao, y las Islas Municipio de Vieques y Culebra. Con ese fin, calificó favorablemente a aquellos licitadores que cumplieran con al menos

---

[2] *Íd.*, págs. 1-13.

dos (2) de los tres (3) criterios establecidos para ser seleccionados en cada zona.

En consecuencia, el 18 de septiembre de 2023, la Junta de Subastas notificó a los licitadores participantes sobre la adjudicación de la Subasta Formal Núm. 23J-08274 mediante correo electrónico.[3] Respecto a los hechos que nos ocupan, Master Roofing fue seleccionado en la Región 9, que comprende las Islas Municipios de Vieques y Culebra, pero no fue escogido para las restantes regiones.

El 10 de octubre de 2023, Master Roofing, representado por la Lcda. Bárbara Cruz Muñiz, presentó una *Solicitud de Revisión Administrativa [...]* ante la Junta Revisora de la Administración de Servicios Generales (en adelante, Junta Revisora).[4] En esta solicitud, argumentó que: (1) la Junta de Subastas erró al adjudicar una subasta formal sin contar con la mayoría requerida para establecer el quórum de los miembros de la Junta; (2) la notificación sobre la subasta fue defectuosa al incluir una tabla sobre *Evaluación de Ofertas por Región* que era ininteligible y carecía de una leyenda; (3) la adjudicación no incluyó una definición de los términos "partidas razonables", "partida esencial" y "costo de partidas esenciales"; y (4) la parte peticionada no especificó cómo aplicaron los criterios establecidos para la adjudicación de la buena pro.

Dadas estas circunstancias, Master Roofing planteó que la Junta de Subastas incumplió con la Ley Núm. 73 de 2019, Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, 3 LPRA secs. 9831-9841h (en adelante, Ley Núm. 73-2019), lo que significó una violación al debido proceso de ley. Por consiguiente, solicitó la

---

[3] *Íd.*, pág. 13.
[4] *Íd.*, págs. 51-62.

revocación de la adjudicación de la Subasta Formal Núm. 23J-08274.[5]

El 16 de noviembre de 2023, la Junta Revisora emitió una *Resolución* en la que determinó que la *Resolución de Adjudicación* de la Junta de Subastas fue deficiente debido a que la tabla intitulada *Evaluación de Ofertas por Región* era ilegible. Sostuvo que dicha tabla era un elemento esencial de la resolución, ya que de ahí surge el análisis de las ofertas presentadas y las razones por las cuales fueron rechazadas o aceptadas por la parte peticionada. Agregó que la ilegibilidad de la tabla privó a las partes de su derecho a conocer las razones por las cuales la agencia tomó su decisión, tal como lo exige el Art. 53 de la Ley Núm. 73-2019 y la jurisprudencia aplicable. También señaló que la notificación defectuosa privó a la Junta Revisora de su función de revisión, al no contar con los fundamentos utilizados por la Junta de Subastas para llegar a su determinación. Así las cosas, manifestó que no tenía jurisdicción para resolver el caso y que el plazo para solicitar revisión judicial no comenzó a transcurrir. Finalmente, ordenó a la Junta de Subastas realizar una nueva notificación, la cual debe incluir los anejos de manera legible, con el fin de garantizar el debido proceso de ley.

El 27 de noviembre de 2023, la Junta de Subastas emitió una *Resolución de Adjudicación Enmendada* a los efectos de incluir como anejos los precios presentados por los diferentes licitadores en sus ofertas.[6] No obstante, la agencia afirmó que la tabla intitulada *Evaluación de Ofertas por Región* es una herramienta elaborada por ellos para resumir los datos de las ofertas individuales y no es un elemento requerido que deba incluirse en la resolución. Sostuvo que la Ley Núm. 73-2019 y el Reglamento Núm. 9230, Reglamento

---

[5] Al igual que la parte peticionaria, los licitadores D Waterproofing, Corp. y JC Remodeling, Inc., impugnaron por separado la *Resolución de Adjudicación* ante la Junta de Subastas.
[6] *Íd.*, págs. 70-83.

Uniforme de Compras y Subastas de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico, solo requieren que la notificación incluya: (1) los nombres de los licitadores que participaron y una síntesis de sus propuestas; (2) los criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si algunos, que tuvieran las propuestas de los licitadores perdidosos; y (4) la disponibilidad y el plazo para solicitar la reconsideración y revisión judicial. Por otra parte, la Junta de Subastas reconoció que la calidad de la tabla disminuyó al ser escaneada y enviada por correo electrónico. Sin embargo, afirmó que la tabla original forma parte del expediente y puede ser examinada si se solicita, ya que es legible a simple vista por una persona con visión promedio.

De acuerdo con lo anterior, la Junta de Subastas optó por no adjuntar la aludida tabla en la *Resolución de Adjudicación Enmendada.* En su lugar, incluyó las ofertas de todos los licitadores de manera íntegra como anejos. Recalcó que las partes "podrán hacer el mismo ejercicio que realizó la Junta de Subastas, sacar sus propios cálculos y contrastarlos con lo esbozado en las Secciones III y IV" de la *Resolución de Adjudicación Enmendada.*[7] Además, proporcionó un enlace en la plataforma de YouTube para que las partes pudieran acceder al acto de apertura y validar las ofertas de los licitadores.

El 21 de febrero de 2024, Master Roofing, a través de la Lcda. Cruz Muñiz, presentó una *Moción Urgente como Requerimiento Previo a la Junta Revisora de Subastas.*[8] En esta solicitud, argumentó, en esencia, que se mantuvo en la espera de recibir la *Resolución de Adjudicación Enmendada* junto con sus anejos en una forma legible. Ante el excesivo tiempo transcurrido sin recibir dicha resolución, la

---

[7] *Íd.*, págs. 72-73.
[8] *Íd.*, págs. 84-88.

representante legal consultó con la página en línea de la Administración de Servicios Generales. Durante este proceso, alegó que se percató de la existencia de dos (2) documentos idénticos, intitulados "Resolución de Adjudicación Enmendada SF 23J-08274". Detalló que en ambos documentos aparece una certificación que indica que el 27 de noviembre de 2023 se envió por correo electrónico una copia fiel y exacta a los licitadores que presentaron ofertas para la subasta en cuestión, junto con una lista de los veinticinco (25) licitadores y sus respectivos correos electrónicos. Sin embargo, enfatizó que ella, en su calidad como representante legal de Master Roofing, no fue incluida en la lista de partes notificadas. Esto, a pesar de que consta en los registros del caso que fue ella quien presentó la impugnación de la resolución original de la subasta ante la Junta Revisora.

Además, aseguró que el Presidente de Master Roofing, el Sr. Juan C. Sánchez Pérez, no recibió la resolución enmendada el 27 de noviembre de 2023 ni en una fecha posterior a través de su correo electrónico. Por estas razones, solicitó a la Junta Revisora que ordene a la parte peticionada que notifique, en un término de cuarenta y ocho (48) horas, la decisión tomada respecto a la Subasta Formal Núm. 23J-08274. Sin embargo, la Junta Revisora no emitió ninguna determinación.

El 28 de febrero de 2024, Master Roofing presentó ante nosotros un recurso de *Mandamus* en el que señaló la comisión del siguiente error:

> LA JUNTA DE SUBASTAS DE LA ASG INCUMPLIÓ CON EL DEBER MINISTERIAL DE NOTIFICARLE AL PETICIONARIO Y A SU REPRESENTANTE LEGAL LA RESOLUCIÓN DE ADJUDICACIÓN ENMENDADA, CONFORME LO DISPONE LA LEY.

El mismo día, Master Roofing presentó una copia del emplazamiento diligenciado sobre el recurso de epígrafe. Cabe resaltar que, **este emplazamiento fue dirigido al Secretario de**

**Justicia, Hon. Domingo Emanuelli Hernández**, el cual fue recibido por la Secretaria Auxiliar del Departamento de Justicia, la Sra. Ruth Irizarry.

Por su parte, el 11 de marzo de 2024, el Gobierno de Puerto Rico, a través de la Oficina del Procurador General de Puerto Rico, presentó una *Solicitud de Desestimación y Escrito en Cumplimiento de Orden al Honorable Tribunal.* En esencia, argumentó que la petición de *Mandamus* presentada por Master Roofing no fue perfeccionada conforme exige nuestro ordenamiento jurídico ni notificada a los demás licitadores. Como alternativa, solicitó la denegatoria del recurso por carecer de méritos para su expedición.

Para sustentar su posición sobre el incumplimiento con nuestro ordenamiento jurídico, el Estado explicó que el recurso de mandamus debe dirigirse hacia la persona a quien la ley le impone el deber ministerial aducido y quien tiene la capacidad de cumplirlo para forzar su ejecución. Sin embargo, subrayó que la petición de *Mandamus* presentada por Master Roofing no está dirigida a la Presidenta de la Junta de Subastas de la Administración de Servicios Generales, la Sra. Ana M. Silva Torres, quien, según la Ley Núm. 73-2019, es la funcionaria designada para el supuesto deber ministerial objeto de la reclamación. Por lo tanto, argumentó que el Tribunal de Apelaciones no adquirió jurisdicción sobre el asunto. Además, manifestó que la falta de notificación del recurso a los demás licitadores participantes en la Subasta Formal Núm. 23J-0874 menoscaba sus derechos. En consecuencia, solicitó la desestimación de la petición de *Mandamus.*

El 13 de marzo de 2024, Master Roofing presentó una *Oposición a Solicitud de* Desestimación. En esta moción, alegó que el recurso de *Mandamus* no fue notificado a la Junta de Subastas debido a que es una agencia que no posee capacidad jurídica separada del Gobierno de Puerto Rico para ser demandada o

demandar, según lo establecido en la Ley Núm. 73-2019. Especificó que se incluyó al Gobierno de Puerto Rico para el diligenciamiento del emplazamiento, en virtud de lo requerido por la Regla 4.4 (f) de las Reglas de Procedimiento Civil. A su vez, sostuvo que mientras la Adminstración de Servicios Generales o su Junta de Subastas carezcan de capacidad jurídica para demandar y ser demandadas, nuestro estado de derecho exige que el emplazamiento se realice por conducto del Secretario de Justicia. Por estas razones, la parte peticionaria emplazó al Hon. Domingo Emanuelli Hernández. Finalmente, cuestionó la notificación de la *Resolución de Adjudicación Enmendada* emitida por la Junta de Subastas debido a su falta de confiabilidad.

Con el beneficio de la comparecencia de las partes, procedemos a discutir las normas jurídicas aplicables a este recurso

-II-

-A-

La jurisdicción es el poder o autoridad que ostentan los tribunales para considerar y decidir los casos o controversias que tienen ante sí. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA*, 211 DPR 521 (2023); *Beltrán Cintrón y otros v. Estado Libre Asociado*, 2004 DPR 89, 101 (2020); *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 499-500 (2019). Por esta razón, la falta de jurisdicción de un tribunal incide directamente sobre el poder del mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). En ese sentido, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *Pueblo v. Torres Medina*, 211 DPR 950 (2023).

De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como: (1) que no sea susceptible de ser

subsanada; (2) las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Allied Mgmt. Group v. Oriental Bank*, supra.

Por consiguiente, un tribunal no tiene discreción para asumir jurisdicción donde no la hay, si carece de jurisdicción, deberá así declararlo y desestimar la reclamación sin entrar en sus méritos, pues la falta de jurisdicción no es susceptible de ser subsanada. Íd.; *Beltrán Cintrón y otros v. Estado Libre Asociado*, supra*; Mun. De San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *Pérez Soto v. Cantera Pérez, Inc. et al.*, 188 DPR 98, 105 (2013).

En lo aquí pertinente, la Regla 83 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83, dispone que:

> (B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:
>
> (1) **que el Tribunal de Apelaciones carece de jurisdicción;**
>
> (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello;
>
> (3) que no se ha presentado o proseguido con diligencia o de buena fe;
>
> (4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos, o
>
> (5) que el recurso se ha convertido en académico.
>
> (C) El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualquiera de los motivos consignados en el inciso (B) precedente.
>
> (Énfasis nuestro).

**-B-**

El Artículo 649 del Código de Enjuiciamiento Civil define al *mandamus* como "un auto altamente privilegiado dictado por el Tribunal Supremo del Estado Libre Asociado, o por el Tribunal de Primera Instancia de Puerto Rico, a nombre del Estado Libre Asociado de Puerto Rico, y dirigido a alguna persona o personas naturales, a una corporación o a un tribunal judicial de inferior categoría, dentro de su jurisdicción, requiriéndoles para el cumplimiento de algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes". 32 LPRA sec. 3421; *AMPR v. Srio. Educación, ELA*, 178 DPR 253, 263 (2010). Cabe precisar que el Artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley 201-2003, según enmendada, 4 LPRA sec. 24y, expresamente confiere autoridad a cualquier panel del Tribunal de Apelaciones, y a cada uno de sus jueces y juezas de expedir autos de *mandamus*. Ahora bien, la frase "altamente privilegiado", contenida en el Artículo 649 del Código de Enjuiciamiento Civil, se refiere a que la expedición del auto no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. *Asoc. Res. Piñones, Inc. v. JCA*, 142 DPR 599 (1997) (Voto Particular de Conformidad del Juez Hernández Denton). Por lo cual, este auto solo se expide cuando el tribunal está convencido de que con él se cumplirán propósitos de utilidad social e individual. *Dávila v. Superintendente de Elecciones*, 82 DPR 264 (1960).

La expedición del auto de *mandamus* procede para hacer cumplir un deber ministerial claramente establecido por ley o que resulte del empleo, cargo o función pública. *Noriega v. Hernández Colón*, 135 DPR 406, 447–448 (1994). Un deber ministerial es un deber impuesto por ley que no permite discreción en su ejercicio, debido a que es mandatorio e imperativo. En ese sentido, el acto es

ministerial cuando la ley prescribe y define el deber que debe ser cumplido con tal precisión y certeza que no da margen al ejercicio de la discreción o juicio. *Álvarez de Choudens v. Tribunal Superior*, 103 DPR 235, 242 (1974).

En lo pertinente, la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, R. 54, dispone que solo procede expedir el auto de *mandamus* cuando "el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo [...]". Además, esta regla dispone que "[e]l auto de *mandamus*, tanto perentorio como alternativo, podrá obtenerse presentando una solicitud jurada al efecto". Íd.

La norma claramente establecida por la jurisprudencia del Tribunal Supremo precisa que para mover la discreción de un tribunal hacia la expedición de un *mandamus* no es suficiente con que la parte promovida tenga el deber ministerial alegado, sino que la parte promovente también debe tener un derecho definido a lo reclamado. *Espina v. Calderón, Juez, y Sucn. Espina, Int.*, 75 DPR 76, 84 (1953). Por otra parte, el auto de *mandamus* no podrá dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley. Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. Lo anterior se debe a que, el objeto del auto no es reemplazar remedios legales sino suplir la falta de estos. *AMPR v. Srio. Educación, ELA*, supra.

Recapitulando, para determinar si se expide un *mandamus* se deben tomar en cuenta las siguientes consideraciones: (1) que el *mandamus* es el recurso apropiado cuando el peticionario no dispone de otro remedio legal adecuado para hacer valer su derecho y cuando se trate del incumplimiento de un deber ministerial que se alega ha sido impuesto por ley; (2) **la solicitud de *mandamus* debe ir dirigida contra el funcionario principal encargado del cumplimiento del deber**, levantar cuestiones de interés y plantear

un problema que requiera una solución pronta y definitiva; (3) el peticionario debe establecer que hizo un requerimiento previo al funcionario para que este realizase el acto para cuyo cumplimiento se solicita la orden del tribunal; y (4) el peticionario tiene un interés indiscutible en el derecho que se reclama, distinto al que pueda tener cualquier otro ciudadano. *Dávila v. Superintendente de Elecciones*, supra.

**-C-**

La Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 73 de 2019, Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019, 3 LPRA secs. 9831-9841h (en adelante, Ley Núm. 73-2019). Esta ley establece como política pública la centralización de los procesos de compras gubernamentales de bienes, obras y servicios, con el objetivo de generar mayores ahorros fiscales en beneficio del Pueblo de Puerto Rico. De acuerdo con lo anterior, se delegó en la Administración de Servicios Generales (en adelante, la ASG) la responsabilidad de implementar dicha política pública y de coordinar y dirigir el proceso de adquisición de bienes y servicios, así como la contratación de servicios del Gobierno de Puerto Rico. *PVH Motor, LLC. v. ASG*, 209 DPR 122 (2022).

Como parte de las disposiciones de la Ley Núm. 73-2019, *supra*, se creó la Junta de Subastas adscrita a la ASG para evaluar y adjudicar, mediante un procedimiento uniforme, las subastas del Gobierno de Puerto Rico que se realicen en cumplimiento con las disposiciones de la Ley Núm. 73-2019. Art. 47, 3 LPRA sec. 9836.

Dicha Junta estará compuesta por un (1) Presidente y cuatro (4) miembros asociados. Íd., Art. 48, sec. 9836a. Entre las facultades y deberes del Presidente o Presidenta se encuentran: (1) representar a la Junta de Subastas en todas aquellas funciones inherentes a su

cargo; (2) dirigir los procesos de la Junta de Subastas; (3) **hacer que se cumpla con el procedimiento para la celebración y adjudicación de las subastas de conformidad con la legislación y reglamentación aplicable**; entre otras facultades, funciones o deberes establecidos por ley o por reglamento. Íd., Art. 52, sec. 9836e.

**-III-**

Conforme al tracto procesal reseñado, así como el derecho aplicable, según el mismo fuera expuesto previamente, nos corresponde desestimar el recurso de epígrafe por falta de jurisdicción. Nos explicamos.

Es importante recalcar que el *mandamus* es un auto altamente privilegiado que va dirigido a alguna persona o personas naturales, a una corporación o a un tribunal de inferior categoría, dentro de su jurisdicción, con el propósito de exigirles que cumplan con algún acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. Artículo 649 del Código de Enjuiciamiento Civil, supra; *AMPR v. Srio. Educación, ELA* supra, pág. 263. Por lo tanto, **la solicitud de *mandamus* debe ir específicamente dirigida contra el funcionario principal encargado del cumplimiento del deber**. *Dávila v. Superintendente de Elecciones*, supra.

En este caso, Master Roofing diligenció el emplazamiento correspondiente al recurso de epígrafe por medio del Secretario de Justicia, Hon. Domingo Emanuelli Hernández. Sin embargo, no es responsabilidad del Secretario de Justicia cumplir con lo solicitado en la petición de *Mandamus*, que es ordenar a la Junta de Subastas de la ASG que notifique inmediatamente la *Resolución de Adjudicación Enmendada.* Según el Artículo 48 de la Ley Núm. 73-2019, 3 LPRA sec. 9836a, esta función corresponde a la Presidenta de la Junta de Subastas, quien tiene la responsabilidad de dirigir

los procesos de la Junta de Subastas y asegurar que se cumpla con el procedimiento para la celebración y adjudicación de las subastas conforme a la legislación y reglamentación aplicable.

Por lo tanto, la petición de *Mandamus* no se perfeccionó conforme exige nuestro ordenamiento jurídico. Ante esto, nos corresponde concluir que carecemos de jurisdicción para entrar en los méritos del caso.

**-IV-**

Por los fundamentos que anteceden, *desestimamos*, **sin perjuicio**, el recurso de mandamus instado por la parte peticionaria, por falta de jurisdicción.[9]

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente, pues, al tratarse de una funcionaria de una agencia del Estado Libre Asociado de Puerto Rico ("ELA"), demandada en su capacidad oficial, el recurso se dirigió a la parte indicada (ELA), quien fue debidamente emplazada a través del Secretario de Justicia. Del epígrafe y el contenido del escrito claramente surge la naturaleza de la reclamación y la persona, dentro del ELA, que se alega incumplió con un deber ministerial. Por otra parte, la peticionaria cumplió con el requisito de cursar un requerimiento previo a la funcionaria (presidenta de la Junta de Subastas de la Administración de Servicios Generales), ello a través del escrito sometido a la referida Junta el 21 de febrero de 2024.

---

[9] Ante lo resuelto, no procede que consideremos los méritos de la alegada falta de notificación adecuada de la *Resolución de Adjudicación Enmendada*, asunto que sin embargo podría ser considerado *motu proprio* por la Junta de Subastas, o planteado mediante el recurso adecuado.

Finalmente, y en los méritos, el récord demuestra que la Junta omitió cumplir con su deber ministerial de notificar adecuadamente la Resolución de Adjudicación Enmendada SF 23J-08274, por lo cual hubiese expedido el auto solicitado.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones