ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| GOBIERNO DE PUERTO RICO; DEPARTAMENTO DE ESTADO; JUNTA EXAMINADORA DE CORREDORES, VENDEDORES Y EMPRESAS DE BIENES RAÍCES DE PUERTO RICO<br><br>RECURRIDA<br><br>V.<br><br>VÍCTOR DANIEL GOYTÍA GARAY<br><br>RECURRENTE | KLRA202400550 | *REVISIÓN JUDICIAL* procedente de la Junta Examinadora de Corredores, Vendedores y Empresas de Bienes Raíces de Puerto Rico<br><br>_____<br>LIC. NÚM.: C-14249<br><br>_____<br><br>SOBRE: RENOVACIÓN DE LICENCIA |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G. Juez Ponente

## S E N T E N C I A

En San Juan, Puerto Rico, a 7 de noviembre de 2024.

Comparece Víctor Daniel Goytía Garay ("Recurrente" o "Sr. Goytía") y solicita que obviemos el curso administrativo ante la Junta Examinadora de Corredores, Vendedores y Empresas de Bienes Raíces ("Junta" o "agencia"), toda vez que la agencia no ha celebrado ningún procedimiento ni ha llevado a cabo trámite alguno por más de 11 meses.

Por los fundamentos que exponemos a continuación, se **expide** el auto de *mandamus* y se ordena a la Junta atender la controversia de epígrafe en un término de treinta (30) días.

-I-

Según se alega en el recurso de revisión, el Sr. Goytía solicitó la renovación de su licencia de Corredor de Bienes Raíces el 9 de agosto de 2022. A tales efectos, el 13 de septiembre de 2022, la Junta presentó un *primer* documento

indicando su intención de denegar la solicitud.[1] Luego de celebrada la vista administrativa, a petición del recurrente, el 18 de septiembre de 2023, la Junta emitió una *Resolución*[2] decretando el archivo sin perjuicio del caso.

Así las cosas, el 1ro de noviembre de 2023 la Junta notificó un *segundo* documento, señalando nuevamente su intención de denegar la solicitud de renovación presentada por el Sr. Goytía.[3] Inconforme con dicha determinación, el 16 de noviembre de 2023, el Sr. Goytía presentó una solicitud de vista administrativa[4]. El 29 de noviembre de 2023, el Sr. Luis Flores, representante de la Junta, respondió a la solicitud del recurrente indicando que el caso se encontraba sometido ante la agencia, sin embargo, esta se encontraba inoperante. Además, señaló que una vez la Junta estuviera en función, se procedería con su solicitud.[5] Posterior a este comunicado, entre el 18 de enero de 2024 y el 20 de agosto de 2024, el Sr. Goytía envió múltiples misivas solicitando la regrabación de la vista administrativa y, finalmente, la desestimación con perjuicios de la querella.[6] Ante la ausencia de respuesta por parte de la Junta, el Sr. Goytía acude ante este Tribunal mediante un recurso de *Revisión Administrativa*, en el cual hace constar los siguientes señalamientos de error:

> **PRIMER ERROR: ¿PUEDE LA JUNTA EXAMINADORA DENEGAR LA RENOVACIÓN DE LA LICENCIA DE CORREDOR A GOYTÍA Y LUEGO GUARDAR SILENCIO ABSOLUTO A LAS COMUNICACIONES DE ÉSTE PARA QUE SE CUMPLIERA CON EL DEBIDO PROCESO DE LEY?**
>
> **SEGUNDO ERROR: CUANDO EN UN PROCESO ADMINISTRATIVO ESTÁN PRESENTES LAS SIGUIENTES CIRCUNSTANCIAS:**
> **1. LA AGENCIA EXPRESA QUE ESTÁ INOPERANTE**

---

[1] Véase Apéndice 1 del recurso de revisión administrativa.
[2] Véase Apéndice 3 del recurso de revisión administrativa.
[3] Véase Apéndice del recurso de revisión administrativa, págs. 11-13.
[4] Véase Apéndice 6 del recurso de revisión administrativa.
[5] Véase Apéndice 7 del recurso de revisión administrativa.
[6] Véase Apéndices 8-12 del recurso de revisión administrativa.

2. **NO RESPONDE A LAS COMUNICACIONES ESCRITAS POR 11 MESES**
3. **EXCEDE EL TÉRMINO DE 6 MESES DISPUESTO EN LA L.P.A.U.**
   **¿PROCEDE PRETERIR EL AGOTAMIENTO DE REMEDIOS ADMINISTRATIVOS?**

**TERCER ERROR: ANTE LA PRESENTACIÓN DE UNA SEGUNDA QUERELLA, NO ATENDIDA POR MÁS DE 11 MESES Y EN VIOLACIÓN AL DEBIDO PROCESO DE LEY, ¿CUÁL ES EL REMEDIO?**
1. **¿PRETERIR EL AGOTAMIENTO DE REMEDIOS ADMINISTRATIVOS?**
2. **¿DESESTIMAR LA QUERELLA?**

-II-

### A. Ley de Procedimiento Administrativo Uniforme[7]

La LPAUG señala que todo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto en un término de seis (6) meses desde su radicación, salvo circunstancias excepcionales.[8] Una vez resuelto el caso, la agencia deberá emitir una orden o resolución final por escrito dentro de los noventa (90) días después de concluida la vista o después de la presentación de las propuestas determinaciones de hechos y conclusiones de derecho. Sin embargo, las partes pueden renunciar a dicho término o pueden ampliarlo con el consentimiento escrito de todas las partes o por causa justificada.[9]

De una lectura de las disposiciones de la LPAUG podemos colegir que ambos términos deben ser interpretados como directivos y no jurisdiccionales, en la medida que pueden ser prorrogables por acuerdo entre las partes o justa causa.[10] A pesar de lo anterior, nuestro más alto foro ha resaltado el interés del legislador de imponer a las agencias la obligación de resolver todo caso sometido ante su consideración dentro de un término de seis (6) meses. Por lo tanto, a fin de asegurar el cumplimiento de las agencias con

---

[7] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[8] 3 LPRA § 9653.
[9] 3 LPRA § 9654.
[10] *Íd.*, a las págs. 494-495.

la letra de la ley, el remedio judicial que tiene a su alcance la parte afectada por la dilación de la agencia es la presentación de un *mandamus* ante el Tribunal de Apelaciones.[11]

Por otro lado, la sección 4.2 de la LPAUG dispone lo siguiente:

> [u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.[12]

A pesar de que la LPAUG no define el término "orden o resolución final", esta contiene una descripción de lo que tiene que incluir la orden o resolución final. A tales efectos, debe incluir determinaciones de hecho y conclusiones de derecho de la decisión y advertir del derecho a solicitar reconsideración, entre otros aspectos.[13] Por lo tanto, una orden o resolución final es aquella que pone fin a los procedimientos ante un determinado foro.[14]

A tenor con lo anterior, el Tribunal de Apelaciones sólo puede revisar las órdenes o resoluciones finales de una agencia luego de que el recurrente haya agotado los remedios administrativos que corresponden. Sin embargo, bajo la doctrina de agotamiento de remedios se puede preterir el cauce administrativo en ciertas circunstancias particulares, a saber: 1. Cuando dicho remedio sea inadecuado; 2. Cuando requerir su agotamiento resultare en un daño irreparable al

---

[11] *Íd.*, a la pág. 495.
[12] Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9672.
[13] 3 LPRA § 9654.
[14] *J. Exam. de Tec. Med. v. Elías, et al.,* 144 DPR 483, 490 (1997).

promovente y en el balance de intereses no se justifica agotar dichos remedios; 3. Cuando se alegue la violación sustancial de derechos constitucionales que amerite pronta reivindicación; 4. Cuando sea inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos; 5. Cuando sea un caso claro de falta de jurisdicción de la agencia; o 6. Cuando sea un asunto estrictamente de derecho y sea innecesaria la pericia administrativa.[15] Cuando estamos ante un escenario de falta de jurisdicción de la agencia, el tribunal puede prescindir del trámite administrativo, toda vez que la actuación de la agencia resultaría *ultra vires*, por lo que es innecesario agotar los remedios provistos. En estos casos, el asunto es enteramente de la competencia judicial.[16]

## B. *Mandamus*

El *mandamus* es un recurso extraordinario que provee nuestro ordenamiento jurídico. El Código de Enjuiciamiento Civil lo define como un auto altamente privilegiado dictado por un tribunal a nombre del Estado Libre Asociado de Puerto Rico para ordenar a un funcionario público, juez o corporación a que cumpla con su deber en ley.[17] Este recurso se utiliza para exigir el cumplimiento de un deber ministerial que no admite discreción en su ejercicio, sino que es mandatorio.[18] Ahora bien, debido a su naturaleza privilegiada, el *mandamus* no procede cuando existen remedios adecuados y eficaces disponibles al promovente.[19] Nuestro más alto foro ha señalado que para mover la discreción del tribunal hacia la expedición del *mandamus*, no es suficiente que el promovido tenga el deber ministerial alegado, sino que

---

[15] Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9673.
[16] *J. Exam. de Tec. Med. v. Elías, et al.,* 144 DPR 483, 492.
[17] Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA § 3421.
[18] *Placer Román v. ELA y otros*, 193 DPR 821, 845 (2015); *AMPR v. Srio. Educación, ELA*, 178 DPR 253, 263 (2010).
[19] Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA § 3423.

el promovente también debe tener un derecho definido a lo reclamado.[20] A esos efectos, la carga probatoria en la concesión o denegación de un *mandamus* descansa sobre el peticionario.[21] Es decir, le corresponde demostrar la existencia de un deber ministerial que no ha sido cumplido por el ente o funcionario público contra quien se presentó el recurso.[22] Cabe señalar que, para expedir este recurso, los tribunales deben medir todas las circunstancias concurrentes en el caso.[23] Este remedio se concede únicamente cuando el tribunal esté convencido de que se cumplirá con los propósitos de utilidad social e individual.[24] Por tal razón, es imprescindible estimar qué efectos tendrá la orden en el cumplimiento de las responsabilidades del ente o funcionario afectado y hasta qué punto habrá de beneficiar al solicitante.[25] Procede, entonces, establecer el más fino equilibrio entre los distintos intereses en conflicto.[26] Finalmente, el criterio fundamental para expedir el auto de *mandamus* descansa en el posible impacto que pudiera ocasionar al interés público.[27]

-III-

Por estar íntimamente relacionados, procedemos a discutir los señalamientos de error de manera conjunta.

En el caso de autos, el recurrente acude ante nos mediante un recurso de revisión administrativa debido a que la Junta no ha resuelto la controversia de epígrafe, habiendo transcurrido más de 11 meses desde la última comunicación en la que le indicaron que la Junta se encontraba inoperante. Es decir, no existe una orden o resolución final de la agencia

---

[20] *Espina v. Calderón, Juez, y Sucn. Espina, Int.*, 75 DPR 76, 84 (1953).
[21] *AMPR v. Srio. Educación, ELA, supra, a la pág. 269 (2010).*
[22] *Íd.*
[23] *Dávila v. Superintendente de Elecciones*, 82 DPR 264, 283-284 (1960).
[24] *Id.*, a la pág. 284.
[25] *Id.*
[26] *Id.*
[27] *AMPR v. Srio. Educación, ELA*, *supra*, a las págs. 268-269; *Noriega v. Hernández Colón*, 135 DPR 406, 448 (1994).

que disponga la controversia en su totalidad y sea revisable por este Tribunal. Sin embargo, nos corresponde evaluar si, a tenor con la normativa antes expresada, las circunstancias del caso permiten que obviemos el cauce administrativo.

De los autos del caso surge que, desde el 1ro de noviembre de 2023, cuando la Junta envió el segundo documento señalando la intención de denegar la solicitud de renovación de licencia, no ha habido trámite alguno por parte de la recurrida. La Junta no ha presentado circunstancia excepcional alguna que le haya impedido atender la controversia de autos según lo requiere la LPAUG. Además, desde la última comunicación que le envió la Junta al recurrente el 1ro de noviembre de 2023 hasta el 20 de agosto de 2024, el Sr. Goytía ha enviado múltiples misivas a fin de que se atienda su caso, sin embargo, no ha obtenido respuesta. La dilación infundada de la Junta en atender la controversia de epígrafe la privó de jurisdicción sobre el asunto y, en consecuencia, resulta innecesario que el recurrente agote los remedios administrativos. Ante tal escenario, el asunto se convierte en uno de entera competencia judicial.

Según surge de los autos del caso, la Junta ha presentado en *dos* ocasiones el mismo documento en el que notifica su intención de denegar la solicitud de renovación de licencia del Sr. Goytía. En la primera ocasión, luego de celebrada la vista administrativa, la Junta decretó el archivo sin perjuicio del caso. En la segunda ocasión, a pesar de que el recurrente solicitó la vista administrativa el 16 de noviembre de 2023, esta no se ha celebrado. En respuesta a dicha solicitud, la Junta se limitó a notificar que "*[e]l caso esta [sic] sometido a la Junta. En estos momentos la misma esta [sic] inoperante, tan pronto la Junta*

*este [sic] en función se procederá con su soilicitud [sic].*"[28] A pesar de lo anterior, el recurrente se mantuvo enviando comunicaciones a la Junta a fin de que se atendiera su reclamo, sin embargo, no ha obtenido respuesta. La Junta ha hecho caso omiso de su deber ministerial, afectando así el derecho a un debido proceso de ley que cobija al Sr. Goytía y que lo ha mantenido en un estado de indefensión durante los pasados meses. Conforme con lo anterior, procede expedir el auto de *mandamus*.

-IV-

Por los fundamentos antes expresados, se expide el auto de *mandamus* y se le ordena a la Junta que atienda cualquier controversia que tenga ante sí relacionada al caso de epígrafe en un término de **treinta (30) días**. Debe acreditar el cumplimiento con lo ordenado ante esta curia dentro del término concedido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] Véase Apéndice 7 del recurso de revisión administrativa.