## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL ESPECIAL

| | | |
|---|---|---|
| AUTO ACCESORIOS DE PUERTO RICO, INC.<br><br>Apelante<br><br>v.<br><br>AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN<br><br>Apelado | KLAN202400971 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2024CV05158<br><br>Sobre: MANDAMUS |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 13 de enero de 2025.

Auto Accesorios de Puerto Rico, Inc., (Auto Accesorios o Apelante) presentó una *Apelación Civil* para recurrir de una *Orden* emitida el 19 de agosto de 2024, notificada el mismo día. En el aludido pronunciamiento, el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) declaró por cumplida la *Sentencia de Mandamus*. En consecuencia, dio por cerrado el caso.

Anticipamos que, por los fundamentos que expondremos, confirmamos la *Orden* apelada.

### I.

Surge de las alegaciones de las partes que la Autoridad de Carreteras y Transportación (ACT) expropió una serie de inmuebles en el Barrio Monacillos de San Juan, Puerto Rico, entre los años 2002 y 2006.[1]

Auto Accesorios es dueño de un inmueble que colinda con algunos de los antes mencionados, donde ha operado su negocio por sobre veinticinco (25) años.[2]

---

[1] Apéndice de la *Apelación*, págs. 2, 45-49, 64-65.
[2] *Íd.*, págs. 2-3.

Número Identificador

SEN2025_____

En el 2023, la ACT presentó ante la Junta de Planificación una solicitud para segregar, agrupar y vender los inmuebles objeto de esta controversia. La Junta de Planificación autorizó la segregación, agrupación y venta de siete (7) predios de terreno pertenecientes a la ACT, mediante *Resolución*.[3]

En desacuerdo, el 20 de junio de 2023, el Apelante presentó una solicitud de reconsideración. Allí, alegó que poseía un derecho de adquisición preferente por ser colindante de la propiedad en controversia y manifestó que interesaba adquirir la titularidad de algunos de los predios a agruparse. Ante la inacción de la Junta de Planificación, Auto Accesorios solicitó revisión administrativa ante este Tribunal el 5 de agosto de 2023, en el caso KLRA202300393.[4]

Un mes después, el 5 de septiembre de 2023, la Universidad Ana G. Méndez (UAGM) presentó una *Moción solicitando intervención y autorización para someter alegato*. Argumentó que el reglamento aplicable no impide que se segregue o agrupe propiedades para la venta; estipula la existencia de un derecho preferente en caso de que la ACT decida vender alguna propiedad.[5]

La ACT se opuso el mismo día. Arguyó que la acción presentada por el Apelante era prematura, toda vez que no se ha llevado a cabo un procedimiento de venta de la propiedad en controversia.[6]

Sometido el asunto ante la consideración de este Tribunal, el 27 de septiembre de 2023, un panel hermano concluyó que el presunto derecho de adquisición preferente de Auto Accesorios no había sido vulnerado.[7]

El 12 de octubre de 2023, la Oficina Asesora de Administración de Propiedades de la ACT y el Departamento de

---

[3] *Íd.*, págs. 33, 69, 98.
[4] *Íd.*, págs. 33-34.
[5] *Íd.*, págs. 35, 98-99.
[6] Apéndice de la *Apelación*, págs. 35, 98-99.
[7] *Íd.*, págs. 33, 39-41 y 99.

Transportación y Obras Públicas (DTOP) emitió una *Resolución*. Se hizo saber que la ACT se proponía vender la parcela de terreno que se describa a continuación:

> RUSTICA: Predio de terreno que radica en el Bo. Monacillos Este Cinco de Monacillos Este del término municipal de San Juan, con una cabida superficial de 4,457.1810 metros cuadrados equivalentes a 1.1340 cuerdas y en lindes por el Norte; con la Avenida Ana G. Méndez, por el Sur, con Universidad Ana G. Méndez; y por el Oeste; con la Avenida Juan Ponce de León. (Según plano de mensura número 31-2022 del DTOP). [8]

Surge de la *Resolución* que la Propiedad había dejado de ser de utilidad pública y la venta de esta constituye una transacción beneficiosa para la ACT. Además, la *Resolución* invita a aquellos con interés en ejercitar el derecho preferente de adquirir las propiedades.[9]

Es un hecho incontrovertido que, el 17 de noviembre de 2023, Auto Accesorios notificó mediante carta a la ACT que interesaba adquirir la mencionada propiedad.[10] Auto Accesorios dio seguimiento el 18 de diciembre de 2023 y el 11 de enero de 2024.[11]

Al no recibir respuesta, presentó un *Auto de Mandamus* el 6 de junio de 2024.[12] Ese mismo día, el TPI dictó una *Orden de Mostrar Causa* a la ACT.[13]

Luego de varios trámites procesales, Auto Accesorios sometió una Solicitud de Información bajo la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*, Ley Núm. 141 del 1 de agosto de 2019 (Ley 141-2019).[14]

El 21 de junio de 2024, el señor José A. Torres Aponte (señor Torres Aponte), director de la Oficina Asesora de Administración de Propiedades de la ACT, suscribió una carta informando que existe una petición previa para adquirir dicho predio, por lo que no pueden

---

[8] *Íd.*, págs. 2, 21.
[9] *Íd.*
[10] *Íd.*, pág. 60.
[11] *Íd.*
[12] Apéndice de la *Apelación*, págs. 1-7.
[13] *Íd.*, pág. 8.
[14] *Íd.*, págs. 27-29.

dar curso a la petición de Auto Accesorios de comprar los inmuebles.[15]

Surge de los documentos que, el 30 de junio de 2006, la UAGM envió carta a la ACT notificando su intención de adquirir las propiedades.[16] El 22 de agosto de 2023, el señor Torres Aponte envió una carta al Director Ejecutivo de la Junta Revisora de la Propiedad Inmueble de la Oficina de Gerencia y Presupuesto, solicitando que certifique y autoricen la venta de los inmuebles objeto de este pleito a la UAGM.[17]

El 30 de agosto de 2023, el departamento legal de la ACT dio visto bueno a la venta de los inmuebles.[18] Así las cosas, el 23 de febrero de 2023, notificada el 11 de marzo de 2019, el Comité de Evaluación y Disposición de Bienes Inmuebles (CEDBI) autorizo la venta de los inmuebles.[19]

Auto Accesorios solicitó *Urgente moción de expedición de entredicho provisional y señalamiento de vista*, el 27 de junio de 2024, junto con los documentos correspondientes.[20]

Al otro día, el TPI dictó *Orden*. Declaró el escrito No Ha Lugar.[21]

Debido a la incomparecencia de la ACT en el caso ante el TPI, Auto Accesorios presentó una *Moción para anotación de rebeldía*, el 2 de julio de 2024.[22] El TPI notificó *Sentencia* en rebeldía contra la ACT, el 3 de julio de 2024. También, declaró Ha Lugar la *Demanda* y expidió el mandamus.[23]

El 6 de agosto de 2024, la ACT presentó un *Escrito en cumplimiento de sentencia de mandamus*.[24] El día siguiente, Auto

---

[15] *Íd.*, pág. 32.
[16] *Íd.*, pág. 68.
[17] *Íd.*, págs. 45-46.
[18] Apéndice de la *Apelación*, pág. 47.
[19] *Íd.*, págs. 48-50.
[20] *Íd.*, págs. 10-50.
[21] *Íd.*, pág. 51.
[22] *Íd.*, págs. 52-57.
[23] *Íd.*, págs. 58-61.
[24] Apéndice de la *Apelación*, págs. 64-88.

Accesorios presentó *Urgente moción sobre venta ilegal y paralización de esta.*[25] Ese mismo día, el TPI paralizó cualquier venta mediante *Orden.*[26]

Auto Accesorios presentó una *Urgente oposición a escrito en cumplimiento de sentencia de mandamus.* Argumentó que ACT no había acreditado debidamente el interés de mayor preferencia de UAGM sobre Auto Accesorios.[27]

En respuesta, el 9 de agosto de 2024, la ACT presentó una *Moción en oposición a solicitud de remedios extraordinarios y sentencia declaratoria,* donde alegó que el Mandamus es un recurso extraordinario y limitado, que su escrito fue suficiente para acreditar un ente con interés de mayor preferencia, y que cualquier disputa debe ser llevado en un pleito independiente de sentencia declaratoria.[28]

El TPI dictó una *Orden* el 19 de agosto de 2024, acogiendo el escrito de ACT. Conforme a lo anterior, concluyó que las controversias planteadas por las partes de epígrafe deben ventilarse mediante la presentación de un pleito en el curso ordinario.[29]

Más adelante, el 30 de agosto de 2024, Auto Accesorios presentó una *Moción para reconsideración de Orden* archivando el caso.[30]

El 4 de septiembre de 2024, ACT y UAGM ejecutaron la Escritura Número 12 de Segregaciones, Descripciones de Remanentes, Agrupación y Compraventa. Mediante esta, la ACT vendió los inmuebles a la UAGM por el precio de $1,350,000.00, a ser satisfecho en o antes del 9 de septiembre de 2024.[31] El

---

[25] *Íd.,* págs. 89-90.
[26] *Íd.,* pág. 91.
[27] *Íd.,* págs. 92-225.
[28] *Íd.,* págs. 226-230.
[29] *Íd.,* págs. 231-233.
[30] Apéndice de la *Apelación,* págs. 234-245.
[31] *Íd.,* págs. 247-263.

24 de septiembre de 2024, ejecutaron Escritura Número 13 sobre Carta de Pago.[32]

Finalmente, el TPI dictó una *Orden* sobre la moción de reconsideración, el 1 de octubre de 2024, donde dispuso "No Ha Lugar".[33]

Inconforme aún, el 30 de octubre de 2024, el Apelante presentó una *Apelación Civil* y esbozó los siguientes señalamientos de errores:

> ERRÓ EL FORO DE INSTANCIA EN ACOGER EL ARGUMENTO DE SENTENCIA DECLARATORIA PRESENTADO POR LA ACT A DESTIEMPO Y EN SU CONSECUENCIA MODIFICANDO UNA SENTENCIA FINAL, FIRME E INAPELABLE.

> ERRÓ EL FORO DE INSTANCIA EN NO EJECUTAR LA SENTENCIA DEL 3 DE JULIO DE 2024, LA CUAL ERA FINAL, FIRME E INAPELABLE, AL NO PASAR JUICIO SOBRE LA SUPUESTA ACREDITACIÓN PROVISTA POR LA ACT, COSA QUE HABÍA ORDENADO; ÚNICO ASUNTO QUE QUEDABA POR RESOLVER Y PARA EL CUAL HABÍA RETENIDO JURISDICCIÓN.

Por otro lado, el 4 de diciembre de 2024, la ACT se opuso. Con el beneficio de sus comparecencias, resolvemos.

## II.

### A.

El auto de *mandamus* es un recurso extraordinario, altamente privilegiado y discrecional. Se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones.[34]

Aunque el *mandamus* es un remedio en ley, participa de la índole de los de equidad.[35] Solamente procede para exigir el cumplimiento de un deber impuesto por la ley, calificado de

---

[32] *Íd.*, págs. 264-268.
[33] *Íd.*, pág. 246.
[34] Artículo 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421; *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, (2021).
[35] *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 264, (2010).

"ministerial". Por tanto, no admite discreción en su ejercicio. En cambio, es mandatorio e imperativo.[36]

La petición de *mandamus* debe evaluarse a la luz de diversos requerimientos, entiéndase: (1) que el demandado tenga un deber u obligación ministerial impuesto por ley; (2) que el peticionario tenga un interés especial en el derecho que reclama; (3) que el deber de actuar de la agencia y el derecho del peticionario surjan de la ley de forma clara y patente; (4) que el peticionario no tiene otro remedio legal para hacer valer su derecho; y (5) que, estimado el efecto que tendrá la expedición del auto, el Tribunal entienda que los fines de la justicia obligan a su expedición.[37]

El Tribunal Supremo ha aclarado que el deber invocado en el *mandamus* no necesariamente tiene que surgir expresamente de un estatuto, pues como tribunales nos corresponde interpretar la ley para determinar la presencia o ausencia del acto ministerial. Es decir, luego de la evaluación estatutaria, los tribunales podemos justipreciar si se intenta "compeler la ejecución de actos ilegales, contrarios a la política pública o tendentes a auxiliar un propósito ilegal", en cuyo caso no procedería el recurso de *mandamus*.[38]

### III.

En el caso ante nuestra consideración, el Apelante aduce que incidió el foro primario al modificar una sentencia final, firme e inapelable. Además, arguye que erró el TPI al no ejecutar la sentencia del 3 de julio de 2024. No le asiste la razón. Por estar íntimamente relacionados, discutiremos ambos planteamientos en conjunto.

---

[36] *Espina v. Calderón, Juez, Sucn. Espina, Int.*, 75 DPR 76, 84 (1953); *Álvarez de Choudens v. Tribunal Superior*, 103 DPR 235, 242 (1974).
[37] Véase, Artículos 649-651 del Código de Enjuiciamiento Civil, *supra*.
[38] Véase, *Noriega v. Hernández Colón*, 135 DPR 406, 456 (1994); *Hernández Agosto v. Romero Barceló*, 112 DPR 407 (1982), citados con aprobación en *Díaz Saldaña v. Acevedo Vilá*, 168 DPR 359, 365 (2006) (Sentencia).

Surge del récord que el mandamus que emitió el foro primario era para que la ACT vendiera una propiedad pública a Auto Accesorios o para que indicara si hay otra parte con derecho preferente. También surge del expediente que ACT certificó que quien tenía derecho preferente era la arrendataria y ocupante de la propiedad, UAGM. Es decir, la controversia ante el TPI concluyó cuando el Apelante cumplió con lo ordenado.

Este Tribunal no puede considerar si existe controversia sobre qué colindante tiene derecho preferente o quién llegó primero a reclamar la propiedad, porque la naturaleza del recurso de mandamus presentado en el foro primario deja fuera de nuestro alcance esta controversia.

Este caso versa únicamente sobre la certificación de un derecho preferente. Es decir, no se trata de una acción de nulidad. La acción de nulidad debería presentarse como un pleito independiente.

**IV.**

Por los fundamentos expuestos, confirmamos la *Orden* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Marrero Guerrero emite voto particular de conformidad.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| AUTO ACCESORIOS DE PUERTO RICO, INC.<br><br>Apelante<br><br>v.<br><br>AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN<br><br>Apelado | KLAN202400971 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2024CV05158<br><br>Sobre: MANDAMUS |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

**VOTO PARTICULAR DE CONFORMIDAD DEL JUEZ MARRERO GUERRERO**

En San Juan, Puerto Rico, a _13_ de enero de 2025.

Estoy conforme con el resultado alcanzado en la Sentencia pues el mismo se ajusta a la normativa relativa al auto de *Mandamus* y su naturaleza extraordinaria. A pesar de lo anterior, queremos dejar consignada la insatisfacción de nuestra conciencia con el trámite aparentemente llevado a cabo hasta finiquitarse la compraventa de los terrenos en controversia. Sin embargo, toda vez que estamos conscientes de que no nos corresponde juzgar en primera instancia los hechos de un caso, esperamos que, de instarse un pleito independiente de nulidad, curso que procedería conforme a lo dispuesto en nuestra Sentencia, la evidencia allí desfilada nos permitirá concluir que la transacción se llevó a cabo conforme a la legislación y reglamentación aplicable y salvaguardando el debido proceso de ley de todas las partes interesadas.

Ricardo G. Marrero Guerrero
Juez de Apelaciones