ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| AZURE DEVELOPMENT, INC.,<br><br>Apelante,<br><br>v.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES,<br><br>Apelada. | KLAN202500483 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan.<br><br>Civil núm.: SJ2024CV11740.<br><br>Sobre: *mandamus* (remedio extraordinario). |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 21 de julio de 2025.

La parte apelante, Azure Development, Inc. (Azure), presentó su recurso de apelación el 28 de mayo de 2025. En este, nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 10 de abril de 2025, notificada ese mismo día. Mediante el referido dictamen el foro de primera instancia declaró sin lugar la solicitud de *mandamus* presentada por Azure contra el Departamento de Recursos Naturales y Ambientales de Puerto Rico (DRNA).

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

I

El 26 de diciembre de 2024, Azure Development, Inc., presentó ante el Tribunal de Primera Instancia una solicitud de *mandamus* contra el DRNA al amparo de la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, y los Artículos 649-661 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421-3433[1].

---

[1] *Véase*, apéndice del recurso, a las págs. 1-304.

Número identificador

SEN2025_____

En síntesis, adujo que, como parte del proceso dirigido a obtener los permisos para la construcción del proyecto residencial *Punta La Bandera*, en el Municipio de Luquillo, el 29 de diciembre de 2022, inició ante el DRNA un procedimiento de *Certificación de Deslinde de la Zona Marítimo Terrestre* (ZMT), al cual se le asignó el número O-AG-CERO2-PO-00038-29122022. Azure añadió que, el 30 de agosto de 2024, el DRNA emitió la certificación de deslinde solicitada. No obstante, el 24 de septiembre de 2024, la señora María Elvinsson, una colindante, quien no había sido notificada del inicio del proceso, impugnó la determinación.

Azure expuso que, el 10 de octubre de 2025, se allanó al planteamiento del defecto en la notificación de la certificación que fuera argüido por la señora Elvinsson, y solicitó que fuera notificada nuevamente. También, alegó que, tras la referida solicitud, el 8 de noviembre de 2024, el Oficial Examinador del caso emitió un informe mediante el cual recomendó que se notificara nuevamente la certificación de deslinde. El 12 de noviembre de 2024, el DRNA emitió una orden a esos efectos[2].

Finalmente, Azure resaltó que, el 17 de diciembre de 2024, en cumplimiento con las disposiciones procesales del *mandamus*, realizó un requerimiento previo al DRNA para que este cumpliera con su presunto deber ministerial de notificar su determinación respecto a la certificación. Arguyó que, conforme la Sec. 3.14 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), concluidas las vistas públicas, el DRNA estaba obligado a emitir una determinación en el caso dentro de un término de noventa (90) días, pero aún no lo había hecho. Por tanto, solicitó al Tribunal de Primera Instancia que ordenara a la agencia que notificara la determinación objeto de controversia.

Tras varias incidencias procesales, el 14 de enero de 2025, Azure presentó una solicitud enmendada de *mandamus* para incluir como parte

---

[2] Azure hizo referencia a los anejos 8 y 9 de su demanda. No obstante, adelantamos que, contrario a lo alegado por Azure, **examinada la orden emitida por el DRNA el 12 de noviembre de 2024, nada surge de ella que sugiera que el DRNA ordenase que se notificara nuevamente la certificación de deslinde**; por el contrario, el DRNA dejó sin efecto la *Certificación de Deslinde* de la ZMT O-AG-CERO2-PO-00038-29122022 **emitida el 30 de agosto de 2024**. *Véase*, apéndice el recurso, a las págs. 281-288.

demandada al Estado Libre Asociado de Puerto Rico y al Departamento de Justicia.

El 10 de febrero de 2025, el Gobierno de Puerto Rico, en representación del DRNA, presentó una moción de desestimación[3]. En su escrito, arguyó que procedía la desestimación del recurso dado que Azure había incumplido con los requisitos del *mandamus*. En particular, señaló que la solicitud no fue juramentada, conforme lo exige la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, y que las alegaciones contenidas en la demanda no demostraban que existiera un deber ministerial con el que se había incumplido.

En cuanto a la aludida certificación de deslinde, el DRNA resaltó que esta fue dejada sin efecto tras la falta de cumplimiento con el requisito de notificación a los colindantes y que, contrario a lo planteado por Azure, no existía mandato alguno a los efectos de que la agencia tuviera que ordenar que se notificara nuevamente la aludida certificación de deslinde. Por tanto, reiteró que no existía un deber ministerial de re notificar por parte del DRNA.

Tras varias incidencias procesales, el 10 de abril de 2025, el Tribunal de Primera Instancia emitió la sentencia mediante la cual desestimó el recurso de *mandamus* incoado por Azure[4]. El foro primario concluyó que, si bien la falta de la correspondiente declaración jurada era una formalidad subsanable, la falta de una cita correcta sobre la fuente de derecho de la cual surgiera el deber ministerial presuntamente incumplido hizo del recurso uno improcedente de su faz.

Inconforme con la determinación del foro primario, el 25 de abril de 2025, Azure presentó una solicitud de reconsideración en la cual aseveró que el DRNA no había declarado o establecido que el proceso de aprobación del deslinde en controversia fuera nulo[5]. Sostuvo que dichas

---

[3] *Véase*, apéndice el recurso, a las págs. 321-332.

[4] *Íd.*, a las págs. 333-338.

[5] *Íd.*, a las págs. 339-349.

alegaciones eran únicamente las interpretaciones del DRNA, que no fueron apoyadas por prueba alguna a esos efectos, y que la agencia no poseía la autoridad para establecer la nulidad del deslinde. Arguyó que la determinación del Tribunal de Primera Instancia era realmente una opinión consultiva fuera del marco de la controversia que le fuera planteada, y que el foro *a quo* carecía de jurisdicción para atender la controversia relacionada con la certificación de deslinde.

Así las cosas, el 28 de abril de 2025, el Tribunal de Primera Instancia notificó a las partes la resolución mediante la cual declaró sin lugar la solicitud de reconsideración[6].

Aún inconforme, el 28 de mayo de 2025, Azure presentó este recurso y formuló los siguientes señalamientos de error:

> Erró el TPI al desestimar el recurso de *mandamus* sin celebrar vista evidenciaria para dilucidar hechos controvertidos y, además, fundamentar la desestimación en un defecto meramente formal y subsanable, la ausencia de juramento, en menoscabo del debido proceso de ley.
>
> Erró el TPI al concluir que no existía un deber ministerial de renotificar la determinación final del DRNA, ignorando tanto la Resolución del 12 de noviembre de 2024, que expresamente ordena la renotificación, como la obligación de notificar resoluciones finales impuesta por el art. 3.14 de la Ley 38-2017.
>
> Erró el TPI al declarar "nula" la Certificación de deslinde, arrogándose la competencia revisora del Tribunal de Apelaciones, lo que constituye un pronunciamiento consultivo y una actuación ultravires.
>
> Erró el TPI al convalidar la inacción del DRNA, dejando sin vía apelativa tanto a colindantes como a AZURE y causando un agravio actual y continuo que atenta contra la eficacia administrativa y la seguridad jurídica.

Por su parte, el 3 de julio de 2025, el DRNA, representado por la Oficina del Procurador General de Puerto Rico, presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, resolvemos.

---

[6] *Véase*, apéndice el recurso, a la pág. 350.

II

El auto de *mandamus* es un recurso altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. *AMPR v. Srio. Educación, E.L.A*, 178 DPR 253, 263 (2010). El *mandamus* está concebido para obligar a cumplir un acto que la ley particularmente ordena como un deber resultante de un empleo, cargo o función pública, **cuando este deber no admite discreción en su ejercicio, sino que es ministerial**. *Íd. Véase*, además, 32 LPRA sec. 3422; *Espina v. Calderón*, 75 DPR 76 (1974).

En lo pertinente a la controversia que atendemos, la Regla 54 de Procedimiento Civil, 32 LPRA Ap. V, dispone que el auto de *mandamus*, fuere perentorio o alternativo, podrá obtenerse **al presentar una solicitud jurada al efecto**. Así mismo aclara que, cuando se solicite dicho remedio y el derecho a exigir la inmediata ejecución de un acto sea evidente y aparezca que no se podrá dar ninguna excusa para no ejecutarlo, el tribunal podrá ordenar perentoriamente la concesión del remedio; de otro modo, ordenará que se presente una contestación. De prosperar la solicitud de *mandamus*, el tribunal celebrará una vista, en la cual recibirá prueba, si resultara necesario, y dictará su decisión prontamente. Finalmente, la Regla 54 de Procedimiento Civil establece que se obtendrá el cumplimiento de las órdenes dictadas por el tribunal del mismo modo en que se exige el cumplimiento de cualquier otra orden.

De otra parte, en cuanto a los requisitos procesales del *mandamus*, el Tribunal Supremo de Puerto Rico ha establecido que, salvo contadas excepciones, para que proceda el recurso se requiere que la parte peticionaria demuestre que hizo un requerimiento previo y que este no fue debidamente atendido por el demandado. *Romero Lugo v. Cruz Soto*, 205 DPR 972, 985 (2020). De igual forma, ha reiterado que no procede expedir un recurso de *mandamus* cuando la parte que lo solicita tiene disponible un

recurso adecuado y eficaz en el curso ordinario de la ley. Lo anterior de conformidad con el Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. Finalmente, al evaluar si procede conceder este recurso, el Tribunal Supremo de Puerto Rico ha establecido que los tribunales consideraran el impacto que podría tener sobre los intereses públicos involucrados, la Rama Ejecutiva y los derechos de terceros. *Lugo v. Cruz Soto*, 205 DPR, a la pág. 985. Afirmó, además, que, entre esos intereses, tiene más peso el impacto posible al interés público. *Íd.*

III

Evaluado el recurso, a la luz del derecho aplicable, este Tribunal concluye que los errores señalados por el apelante no fueron cometidos por el foro apelado. Veamos.

Mediante sus señalamientos de error, Azure sostiene que el Tribunal de Primera Instancia erró al desestimar el recurso de *mandamus* sin celebrar una vista evidenciaria. Aduce que el foro primario incumplió con el debido proceso de ley al apoyar su determinación en un defecto de forma subsanable; en particular, la ausencia de una demanda juramentada.

Además, sostiene que el foro *a quo* incidió al concluir que no existía un deber ministerial por parte del DRNA de notificar nuevamente la determinación final sobre la certificación de deslinde. Arguye que lo anterior ignora, tanto la *Resolución* emitida por el DRNA el 12 de noviembre de 2024, como la obligación de notificar resoluciones finales, que surge de la Sec. 3.14 de la LPAUG, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9654.

De otra parte, señala que, con su determinación, el Tribunal de Primera Instancia declaró "nula" la certificación de deslinde y al hacerlo se arrogó la competencia revisora de este Tribunal de Apelaciones. La referida actuación la cataloga como un pronunciamiento consultivo y una actuación *ultra vires*. Finalmente, reitera que el foro primario erró en su determinación y, en consecuencia, validó la inacción del DRNA, lo cual dejó sin vía apelativa a las partes del título.

Por su parte, en su oposición, el DRNA resalta que la certificación de deslinde, que Azure insiste debe ser notificada nuevamente, fue anulada por la agencia, por lo que no podía existir un deber ministerial de "re notificar". Ello, por razón de que el inicio del proceso no le fue notificado a la totalidad de los colindantes a tenor con los requisitos legales dispuestos para obtener la certificación de deslinde solicitada. El DRNA sostuvo que, en ese sentido, la certificación carecía de todo efecto legal por haber sido emitida sin cumplir con las garantías del debido proceso de ley, y su renotificación no subsanaría, en modo alguno, el vicio que ocasionó su nulidad. Aún más, resalta que la solicitud de *mandamus* presentada por Azure estaba basada en una premisa falsa. En particular, en que el DRNA ordenó que se volviera a notificar la certificación de deslinde.

Por estar intrínsicamente relacionados, discutiremos los señalamientos de error en conjunto.

Como discutimos, en cuanto al requisito de forma del *mandamus*, se requiere que este sea juramentado por la parte que promueve su expedición. Al examinar la petición de *mandamus* presentada resulta evidente que Azure no cumplió con los requisitos exigidos para la expedición de este recurso altamente privilegiado. Examinado el expediente, surge que en este caso la petición de *mandamus* no fue acompañada con una declaración jurada, lo cual ciertamente impidió que se perfeccionara el recurso, ya que se trata de un requisito de forma que, si bien resulta subsanable, no puede ser obviado.

No obstante, en cuanto a su primer señalamiento de error, debemos resaltar que, contrario a lo planteado por la parte apelante, la falta de juramento no fue el fundamento para denegar la expedición del auto de *mandamus*. De hecho, el Tribunal de Primera Instancia aclaró **expresamente** en su sentencia que, si bien como cuestión de derecho la falta de juramento resultaba suficiente para desestimar, entendía que dicha formalidad era subsanable mediante la presentación de la declaración jurada. Solo entonces, el foro primario dispuso que su determinación

estaba amparada en la falta de una cita correcta sobre la fuente de derecho de la cual surgiera el presunto deber ministerial incumplido por el DRNA. Concluyó que Azure se limitó a argüir, sin fuente legal que lo respaldara, que el DRNA tenía el deber ministerial de notificar una certificación de deslinde que fue dejada sin efecto.

Conforme lo anterior, colegimos que no se cometió el error señalado. Ciertamente, la falta de una cita correcta sobre la fuente de derecho del cual surge el deber ministerial presuntamente incumplido hace del recurso de *mandamus* presentado por Azure uno improcedente de su faz.

Además, examinado el trámite procesal relacionado a la solicitud de deslinde instada por Azure, surge que la notificación objeto de controversia fue dejada sin efecto como consecuencia de las fallas en el proceso. En particular, debido a que las partes colindantes no fueron notificadas del proceso y ello incidió sobre su derecho a participar del mismo.

No podemos pasar por alto que, tanto en su solicitud de *mandamus* como en su recurso apelativo, Azure hace referencia a una "orden" emitida por el DRNA el 12 de noviembre de 2024. En ambas ocasiones, induce a error a este Tribunal al plantear que del referido dictamen surge una indicación por parte de la agencia mediante la cual esta ordenaba que se volviera a notificar la certificación de deslinde, tras que prosperara la impugnación de esta.

Examinada la totalidad del expediente, nada surge de él que nos permita identificar una orden del DRNA que dispusiera para que se notificara nuevamente la certificación de deslinde. Por el contrario, en la *Resolución* emitida el 12 de noviembre de 2024, el DRNA, tras acoger el informe del Oficial Examinador del 11 de octubre de 2024, expresamente dejó sin efecto la certificación de deslinde emitida el 30 de agosto de 2024.

Evaluado el trámite del caso, resulta evidente que no fue el Tribunal de Primera Instancia el que decretó la nulidad de la certificación de deslinde de la ZMT, sino el propio DRNA; ello, al amparo de las facultades que le han sido otorgadas por ley y en fiel cumplimiento con el Reglamento Núm.

4860 del 29 de diciembre de 1992, que establece los criterios y mecanismos para la delimitación, vigilancia, conservación y saneamiento de la ZMT[7]. Reafirmamos que tal nulidad no se subsana con la notificación de la certificación a los colindantes. En atención a lo anterior, concluimos que tampoco se cometieron los últimos dos errores señalados y reiteramos que no procedía la expedición del auto de *mandamus*.

IV

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[7] Se trata de la normativa intitulada *Reglamento para el aprovechamiento, vigilancia, conservación y administración de las aguas territoriales, los terrenos sumergidos bajo estas y la zona marítimo terrestre.*